**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CONTOUR DATA SOLUTIONS LLC**<br>**Plaintiff,**<br>**v.**<br>**GRIDFORCE ENERGY MANAGEMENT LLC, *et al.***<br>**Defendants.** | **CIVIL ACTION NO. 20-3241** |

**MEMORANDUM OPINION**

**Rufe, J.** **August 23, 2024**

Plaintiff Contour Data Solutions, LLC brings this action against Gridforce Energy Management LLC and NAES Corporation (together, "Gridforce") for breach of contract, conversion and/or negligent destruction of property, state and federal trade secret misappropriation, and violations of the Federal Computer Fraud and Abuse Act ("CFAA"), the Federal Stored Communications Act ("SCA"), and the Texas Harmful Access by a Computer Act ("THACA"). Gridforce has asserted a counterclaim for breach of contract. Gridforce seeks to exclude the opinions of Contour's experts James Joseph ("J.T.") Thompson, the former President of Gridforce, and William Brian Bohn, Chief Architect at Clearpath Solutions Group.[1] For the reasons set forth below, both motions will be granted.

[1] *See* Gridforce's Mot. Exclude Bohn [Doc. No. 338]; Defs.' Mot. Exclude Thompson [Doc. No. 342]. Gridforce has adopted the briefings of former Defendants CDW Corporation and CDW Direct LLC, who are no longer parties. *See* Gridforce's Notice [Doc. No. 391].

## I. Background

This case arises from a contractual dispute over the ownership and use of an Information Technology System ("IT System") that Contour set up for Gridforce to run its business.[2] Contour is a technology company in the Delaware Valley region which provides various technology services, including information technology and cloud-based network operating support.[3] Contour works with each of its clients to identify their goals, technology integration issues, and problem areas to develop an IT strategy and system.[4] Gridforce is a power services company that provides energy control and integration management services to balance and route electricity throughout North America.[5]

On June 27, 2014, Gridforce and Contour entered into a Managed Master Services Agreement ("MMSA") outlining the parties' obligations for the IT System at issue in this case.[6] The MMSA was signed by Thompson in Texas on June 25, 2014, and then by Rocco Guerriero, the founder of Contour, in Pennsylvania on June 27, 2014. The MMSA provided for an initial 36-month term, with an annual 12-month renewal unless terminated with written notice not less than 180 days before the expiration of the Initial Term or any Renewal Term.[7] The MMSA governed Contour's design, construction, and maintenance of Gridforce's IT System, as well as the parties' rights and responsibilities concerning the IT System.[8] Contour was tasked with

[2] Gridforce contests nearly all of Contour's Statement of Facts, as filed in conjunction with Contour's summary judgment motion. *See* Gridforce's Resp. Contour's Statement of Facts [Doc. No. 358-1]. The Court therefore provides a cursory outline of the facts, which will be supplemented in the discussion section.

[3] *See* Gridforce's Resp. Contour's Statement of Facts [Doc. No. 358-1] at SF 1, 2.

[4] *Id.*at SF 2.

[5] *Id.* at SF 3.

[6] Contour's Decl. & Exs., Ex. 73, MMSA [Doc. No. 336-3].

[7] *Id.* at 2.

[8] Gridforce's Resp. Contour's Statement of Facts [Doc. No. 358-1] at SF 27, 59.

server virtualization, *i.e.*, converting Gridforce's physical servers into a cloud-based virtual environment through the use of virtual machines.[9] Server virtualization allows virtual servers to perform specific tasks within the IT environment.[10] Contour asserts that Gridforce stole its IT System, which it claims is a trade secret, and then transitioned the system to another provider.

## II. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony and provides that:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.[11]

The focus of the Court's inquiry must be on the expert's methods, not the expert's conclusions. The Third Circuit has interpreted Rule 702 as setting forth three requirements: (1) the expert must be qualified; (2) the expert must testify about matters requiring scientific, technical, or specialized knowledge; and (3) the expert's testimony must assist the trier of fact.[12] "The proponent of the expert testimony bears the burden to show by a preponderance of the

---

[9] A virtual machine is a software program which emulates a physical computer or mimics a physical server or physical hardware. An operating system and applications can then be installed onto the virtual machine. A virtual machine can be created and run from a computer or deployed from a cloud-based environment. Once a virtual machine is created, an operating system and applications, such as email, phone, and file servers, may be installed on it and it can be deployed into a specific IT environment. *See Contour Data Sols. LLC v. Gridforce Energy Mgmt. LLC*, No. 20-3241, 2021 WL 5536266, at *6 (E.D. Pa. Sept. 2, 2021).

[10] *Id.* ¶ 31.

[11] Fed. R. Evid. 702.

[12] *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008); *accord In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741–43 (3d Cir. 1994).

evidence that their expert's opinion is reliable."[13] District courts have "broad discretion in determining the admissibility of evidence, and 'considerable leeway' in determining the reliability of particular expert testimony . . . ."[14]

Under the first requirement, "a broad range of knowledge, skills, and training qualify an expert as such."[15] However, courts have rejected the idea that witnesses offered as experts must meet "overly rigorous requirements of expertise," so long as they have "more generalized qualifications."[16] Under the second requirement, "an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable."[17] An expert's opinion is reliable if it is "based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation . . . .'"[18] The experts must have good grounds for their opinions, but not necessarily the best grounds or unflawed methods.[19] Under the third requirement—whether the expert's testimony will assist the trier of fact—"the Court must determine the 'fit' of the expert's testimony as it relates to the case at hand . . . ."[20] The fit requirement "goes primarily to relevance."[21]

---

[13] *Whyte v. Stanley Black & Decker, Inc.*, 514 F. Supp. 3d 684, 691 (W.D. Pa. 2021) (citing *Oddi v. Ford Motor Co.*, 234 F.3d 136, 144 (3d Cir. 2000)).

[14] *Walker v. Gordon*, 46 F. App'x 691, 694 (3d Cir. 2002) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152–53 (1999)).

[15] *Paoli*, 35 F.3d at 741.

[16] *Id.*

[17] *Id.* at 742.

[18] *Id.* (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993)).

[19] *See Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 784 (3d Cir.1996); *Paoli*, 35 F.3d at 744–45.

[20] *Macaluso v. Apple, Inc.*, No. 21-1361, 2023 WL 4685965 (E.D. Pa. July 21, 2023).

[21] *Daubert*, 509 U.S. at 591.

## III. DISCUSSION

### a. J.T. Thompson

J.T. Thompson, the former President of Gridforce, negotiated the MMSA on Gridforce's behalf and was terminated from Gridforce in December 2015.[22] He has now provided an expert opinion for Contour, opining on the independent economic value ("IEV") of the IT System.[23] Gridforce moves to exclude Thompson's testimony under Rule 702 because it is unreliable. Specifically, Gridforce argues that Thompson did not review the IT System or any documents in forming his opinion,[24] and he fails to articulate how the IT System functions or how it is different from other IT systems used by Gridforce's competitors.

In the Third Circuit, "an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable."[25] District courts consider several factors in determining reliability, including:

[22] Hyla Decl., Ex. 1., Thompson Dep. Tr. [Doc. No. 347] at 102–03.

[23] *See* Hyla Decl., Ex. 3, Thompson Report [Doc. No. 347]. Contour bring multiple misappropriation of trade secret claims. To prove misappropriation, Contour must establish "(1) the existence of a trade secret; (2) communication of the trade secret pursuant to a confidential relationship; (3) use of the trade secret, in violation of that confidence; and (4) harm to the plaintiff." *Ecosave Automation, Inc. v. Del. Valley Automation, LLC*, No. 20-5564, 540 F. Supp. 3d 491, 500 (E.D. Pa. 2021) (citations omitted) (discussing elements of the Pennsylvania Uniform Trade Secrets Act ("PUTSA")). A trade secret is defined under the relevant statutes as "information, including a formula, pattern, compilation, program, device, method, technique, or process" that "hold[s] independent economic value because it is not generally known to or readily ascertainable by others who stand to benefit economically if they use or disclose it, and . . . [is] the subject of reasonable efforts to maintain its secrecy." *LeJeune v. Coin Acceptors, Inc.*, 849 A.2d 451, 462 (Md. 2004) (quotation marks and citations omitted) (discussing Maryland Uniform Trade Secrets Act); *see also Teva Pharms. USA, Inc. v. Sandhu*, 291 F. Supp 3d 659, 675 (E.D. Pa. 2018) (discussing Defend Trade Secrets Act, 18 U.S.C. § 1839(3), and PUTSA, 12 Pa. Cons. Stat. § 5302). Therefore, the determination of whether the IT System has independent economic value is essential to the federal and state misappropriation claims.

[24] Thompson states in his Report that his opinions are based on his "personal knowledge, [his] technical, specialized and professional education, experience, expertise and knowledge and upon facts provided to [him]." *See* Hyla Decl., Ex. 3, Thompson Report [Doc. No. 347] at 10.

[25] *Paoli*, 35 F.3d at 742.

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.[26]

Contour has failed to meet its burden of establishing that Thompson's opinions are reliable.[27] A careful review of Thompson's expert report reveals that his opinions are based on his "subjective belief" rather than the "methods and procedures of science."[28] "[I]t is impossible to test a hypothesis generated by a subjective methodology because the only person capable of testing or falsifying the hypothesis is the creator of the methodology."[29]

Contour argues that Thompson's opinion is based on his personal knowledge, 22 years of experience in creating and operating balancing authority services like Gridforce, and 30 years of experience as a power services executive.[30] However, Thompson does not set forth any established method for evaluating whether the IT System has IEV or constitutes a trade secret. Contour's hyperbolic statement that Thompson is "probably the best person in the world to opine"[31] on the IEV of the IT System is of little value when his conclusion is premised merely on his own companies' decisions to license the IT System, rather than on any technical knowledge.[32] This type of testimony cannot be properly tested through cross-examination.[33]

---

[26] *Pineda*, 520 F.3d at 247–48 (citing *Paoli*, 35 F.3d at 742 n.8).

[27] *Whyte*, 514 F. Supp. 3d at 691 (citing *Oddi*, 234 F.3d at 144).

[28] *Paoli*, 35 F.3d at 742.

[29] *In re TMI Litig.*, 193 F.3d 613, 703 n.144 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000).

[30] Contour's Resp. Opp'n Mot. Exclude Thompson [Doc. No. 352] at 2.

[31] *Id.* at 5.

[32] *See* Hyla Decl., Ex. 3, Thompson Report [Doc. No. 347] at 2–4.

[33] *See Blue Cross Blue Shield Assoc. v. GlaxoSmithKline LLC*, No. 13-4663, 2019 WL 4751883, at *7 (E.D. Pa. Sept. 30, 2019) (excluding an expert's experienced-based opinion that amounted to nothing more than "say-so" expert testimony); *see also* Fed. R. Evid. 702 advisory committee's note to 2000 amendment ("If the witness is

Expert testimony must also "fit the issues in the case," *i.e.*, "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact."[34] One of the fundamental issues in this case is whether the IT System derives IEV from its secrecy.[35] Thompson, however, opines only on the general value of the IT System—namely, his view that the IT System has value because certain unidentified companies in the industry might be willing to pay to use it—and not whether it derives value from its secrecy. Therefore, his testimony does not "fit" the case. While Thompson may very well be a useful fact witness at trial, the Court will exclude Thompson's expert opinion on the basis of lack of reliability and fit under Rule 702.[36]

**b. William Brian Bohn**

William Brian Bohn, Contour's IT expert, is a Chief Architect at Clearpath Solutions Group. Bohn has submitted two expert reports dated October 15, 2021 (the "First Bohn Report")[37] and April 12, 2022 (the "Second Bohn Report").[38] The Second Bohn Report consists of three sections. The first section sets forth Bohn's opinion on the hacking claims. The second section is titled "Content of Contour IT System – Stolen in Violation of Anti-Hacking Statutes –

---

relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."); *Player v. Motiva Enters., LLC*, 240 F. App'x 513, 520 (3d Cir. 2007) ("The District Court certainly had the discretion to exclude 'opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.'" (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

[34] *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).

[35] *Contour*, 2021 WL 5536266, at *15.

[36] Gridforce also argues that Thompson's opinion should be excluded because he has (or had) a financial interest in the outcome of the case. The Court need not determine whether Thompson's alleged financial interest constitutes a conflict warranting exclusion, given that his opinion is subject to exclusion under Rule 702.

[37] Byer Decl., Ex. A, First Bohn Report [Doc. No. 338-2]. The First Bohn Report also attached a document titled the "PI Report," which was prepared by Gary Vaughan, another employee at Clearpath Solutions Group. Byer Decl., Ex. I, PI Report [Doc. No. 338-2].

[38] Byer Decl., Ex. B, Second Bohn Report [Doc. No. 338-2]. The Court ordered all expert reports on the original claims in this case to be served by October 15, 2021. Order, June 29, 2021 [Doc. No. 142]. Contour timely served the First Bohn Report on that date. The Court then re-opened fact discovery to account for Contour's additional hacking claims and ordered Contour to serve additional reports regarding the new claims by April 12, 2022. Order, Jan. 14, 2022 [Doc. No. 198]. Contour served the Second Bohn Report on the second deadline set by the Court.

94 Virtual Machines (VM's)." The third section provides rebuttal opinions regarding Gridforce and CDW's expert witnesses.

Gridforce moves to exclude Bohn's opinions under Rule 702.[39] Gridforce argues that: (1) Bohn's IEV opinions are unreliable; (2) Bohn's opinions on 70 pages of settings are unreliable; (3) Bohn's opinions that Gridforce took the IT System are unreliable; and (4) Bohn's conclusion that the IT System is an electronic communication is a legal conclusion and therefore inadmissible. The Court discusses each argument in turn.

*1. Bohn's IEV Opinions*

Gridforce contends that Bohn's opinion on the IEV of the IT System is unreliable. To be considered a trade secret, the IT System must "derive[ ] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]"[40] Therefore, an expert opinion on the IEV of the IT System is directly relevant to Contour's misappropriation of trade secret claims.

In the First Bohn Report, Bohn opines that the IT System "is a compilation of information . . . created solely by Contour that is (a) not generally known to other persons who can obtain economic value from its disclosure and use, (b) not readily ascertainable by proper

[39] Gridforce also moves to strike sections two and three of the Second Bohn Report based on untimeliness. However, the Court allowed additional reports to be filed, and Gridforce has failed to establish prejudice. Gridforce was provided with the opportunity to depose Bohn after the Second Bohn Report. *See Cochran v. Jackson*, No. 14-2165, 2015 WL 3555291, at *4 (E.D. Pa. June 8, 2015) (holding that prejudice caused by an untimely report could be cured by allowing plaintiff the opportunity to depose defendant's expert prior to trial); *Macaluso*, 2023 WL 4685965, at *7 (declining to exclude an opinion on the basis that it was untimely because defendant failed to explain how it would be prejudiced by a revision in the opinion, particularly when no trial date certain was fast approaching). Further, it appears that Gridforce's experts had access to the same information as Bohn, and that the Second Bohn Report does not necessarily include any new or supplemental opinions (except the opinions on the computer hacking claims). Therefore, the Court declines to exclude the Second Bohn Report based on untimeliness.

[40] *Oakwood Laboratories LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (quoting 18 U.S.C. § 1839(3)).

means by any such persons and (c) derives independent economic value from (a) and (b)."[41] In other words, Bohn recites the legal standard to be considered a trade secret and says that Contour's IT System fits the bill. However, in reference to the First Bohn Report, Bohn admits that he does not identify any record evidence in support of that assertion,[42] nor does he articulate *any* methodology for his conclusions. During his deposition, Bohn gave the following response when asked about the standard he used:

> I think I used a common sense standard; and you can tell me if I'm wrong on this, but I don't think I am. We know that to build this system again was going to cost a million dollars . . . . We know that, clearly, Gridforce thought it had value. They took it, so clearly it has economic value. I don't know another way to say that.[43]

Because "the word 'knowledge' connotes more than subjective belief or unsupported speculation,"[44] there is no reliable foundation for an expert utilizing what is described solely as a "common sense standard."[45] Common sense is what juries bring to the table and therefore this expert opinion would not assist the jury. Bohn's IEV opinion in his First Report does not pass muster under the standards of Rule 702.

Gridforce takes further issue with the Second Bohn Report, characterizing it as an unpersuasive attempt to rehabilitate Bohn's IEV opinions. Bohn relies on the following statements to demonstrate why he believes the IT System has IEV:

1) Gridforce tried to create its own such IT System in 2014 prior to engaging Contour, but could not;
2) Gridforce paid Contour over $1 million to create the Contour IT System and then $130,000 a month to use (and manage) it;

[41] Byer Decl., Ex. A, First Bohn Report [Doc. No. 338-2] at 8.

[42] Byer Decl., Ex. D, Bohn Dep. Tr. [Doc. No. 338-2] at 153.

[43] *Id.* at 118.

[44] *Daubert*, 509 U.S. at 590.

[45] Byer Decl., Ex. D, Bohn Dep. Tr. [Doc. No. 338-2] at 118.

3) NAES/Gridforce also tried to create their own IT System in 2017, but could not;
4) NAES/Gridforce tried to get several other vendors to create a new IT System to replace the Contour IT System, but could not find one that could do it for less than they had paid/were paying Contour;
5) Gridforce terminated the MMSA on February 7, 2020, stopped paying Contour for use of the Contour IT System, but continued and still continues to use the Contour IT System without authorization to make money to this day;
6) Contour spent an enormous amount of person hours of highly trained experienced software engineers, time and money over a year to create the Contour IT System precisely because no one else had one or could easily do it;
7) In 8 years since Contour created the Contour IT System, no one else has created one like it and none other is available at any price in the marketplace.[46]

Gridforce contends that the above statements are not grounded in any concrete evidence, and that Bohn has not investigated any of these assumptions to confirm their validity.[47] Instead, Gridforce contends, Bohn was provided these assumptions by Guerriero, Contour's founder, and Contour's counsel.[48] According to Gridforce, Bohn's assumption that no one has created an IT system like this one contradicts his own deposition testimony stating that he has seen similar systems used elsewhere.[49]

Contour responds that Bohn "clearly knows" that the IT System is "not generally known as he knows the business, the marketplace, and knows that no such system is available for sale or license."[50] Specifically, Contour asserts that Bohn's IEV opinions are reliable because they are

---

[46] Byer Decl., Ex. B, Second Bohn Report [Doc. No. 338-2] at 19.

[47] Gridforce's Mem. Supp. Mot. Exclude Bohn [Doc. No. 338-1] at 7; *see also Pa. Dental Ass'n v. Med. Serv. Ass'n of Pa.*, 745 F.2d 248, 262 (3d Cir. 1984) ("[T]he factual predicate of an expert's opinion must find some support in the record." (citing *Merit Motors, Inc. v. Chrysler Corp.*, 569 F.2d 666 (D.C. Cir. 1977)).

[48] Gridforce's Mem. Supp. Mot. Exclude Bohn [Doc. No. 338-1] at 7; *see also* Byer Decl., Ex. D, Bohn Dep. Tr. [Doc. No. 338-2] at 225–27.

[49] Gridforce's Mem. Supp. Mot. Exclude Bohn [Doc. No. 338-1] at 8 (citing Byer Decl., Ex. D, Bohn Dep. Tr. [Doc. No. 338-2] at 118).

[50] Contour's Resp. Opp'n Mot. Exclude Bohn [Doc. No. 351] at 5–6 (emphasis omitted).

based on facts in the record, his review and study of the IT System, his many years of experience in the industry, and his knowledge of the marketplace.[51]

Third Circuit precedent supports the exclusion of testimony where an expert chooses "to rely blindly upon the conclusions generated by Plaintiffs['] other experts . . . ."[52] Here, Bohn is not even relying on other experts, but instead is relying on the statements of Contour's founder and its counsel.[53] Many of the underlying facts upon which Bohn claims to rely are most fairly characterized as "subjective belief or speculation."[54] The assumptions upon which Bohn relies are riddled with unverifiable conjecture and inconsistencies, and his reliance on these assumptions would invade the fact-finding province of the jury. For example, Contour has not established how Contour's founder would have knowledge about Gridforce's prior attempts to create an IT System before contracting with Contour. Furthermore, Bohn assumes that Gridforce continues to use the Contour IT System without authorization to this day. However, this "assumption," which Bohn presumes to be a fact based on Guerriero and his counsel's blanket statements, is one of the fundamental material disputes of the case. The Court finds that Bohn's reports and deposition testimony demonstrate that his IEV opinion is unreliable.

*2. Bohn's Opinions on 70 Pages of Settings*

Bohn defines the "IT System" as 94 virtual machines, 40,000 lines of code, and related firewalls.[55] In the Second Bohn Report, Bohn identifies and outlines 70 pages of settings which, he asserts, provide "a more comprehensive description of the Contents of the 94 Virtual

---

[51] *Id.* at 6.

[52] *TMI*, 193 F.3d at 714 (quotation marks and citation omitted).

[53] Byer Decl., Ex. D, Bohn Dep. Tr. [Doc. No. 338-2] at 228–29.

[54] *TMI*, 193 F.3d at 670.

[55] Byer Decl., Ex. A, First Bohn Report [Doc. No. 338-2] at 10.

Machines . . . ."[56] Bohn concludes that these 70 pages of settings are evidence that the IT System, in its entirety, qualifies as a trade secret, but he does not describe any reliable method for how he reached that conclusion. Notably, Bohn fails to articulate why *these* 70 pages are the ones presented in his expert report. Nor does he elaborate upon why he selected settings from only 58 of the 94 virtual machines. Bohn testified at his deposition that the compilation of settings in his report was prepared by Jason Smith, his engineer.[57] Although "[a]n expert witness is permitted to use assistants in formulating his expert opinion,"[58] reliance on an assistant does not do away with Rule 702's fundamental requirement that an expert use "reliable principles and methods."[59] Bohn testified that he gave Smith direction on "what to look up, what to bring in, and what to pull," but at no point has Bohn clarified what those directions were, let alone the reasoning behind them.[60]

Contour protests that Gridforce fails to present any supporting expert testimony or authority for its contention that Bohn's methodology is unreliable. However, it is *Contour's* burden as the proffering party to demonstrate that its expert has employed a reliable methodology.[61] Likewise, Contour bears the burden of establishing how its expert's opinion will be useful to the jury.[62] It is neither Gridforce nor the Court's responsibility to guess at the

---

[56] Byer Decl., Ex. B, Second Bohn Report [Doc. No. 338-2] at 19. Although Bohn opines that each of the 94 virtual machines constitute a trade secret, Gridforce points out (and Contour appears not to dispute) that the settings he identifies only appear in 58 of the 94 virtual machines. Gridforce's Mem. Supp. Mot. Exclude Bohn [Doc. No. 338-1] at 9–10; Contour's Resp. Opp'n Mot. Exclude Bohn [Doc. No. 351] at 7.

[57] Byer Decl., Ex. D, Bohn Dep. Tr. [Doc. No. 338-2] at 268.

[58] *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 612 (7th Cir. 2002).

[59] Fed. R. Evid. 702.

[60] Byer Decl., Ex. D, Bohn Dep. Tr. [Doc. No. 338-2] at 268.

[61] *Whyte*, 514 F. Supp. 3d at 691 (citing *Oddi*, 234 F.3d at 144); Fed. R. Evid. 702 (requiring "*the proponent* [to] demonstrate[ ] [reliability] to the court" by a preponderance of the evidence (emphasis added)).

[62] *Brand Design Co., Inc. v. Rite Aid Corp.*, No. 22-1174, 2024 WL 643141, at *2, *4 (E.D. Pa. Feb. 14, 2024) (citing *Oddi*, 234 F.3d at 144); Fed. R. Evid. 702.

significance of 70 pages of IT system settings without proper context. Nor can the Court be expected to speculate about what methodology *may* have been used by an expert in a given field. Here, in the context of a dispute over trade secret classifications, Bohn must describe the methodologies he employed in evaluating the independent economic value of the IT System, and he must further clarify how his opinions, based upon his expertise in the field of computer systems and information technology, would be helpful to laypersons on a jury who do not have such expertise. Bohn has failed to do so.

District Courts are tasked with considering the factors set forth by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[63] in evaluating reliability.[64] The Court cannot even begin to apply many of these factors, as Bohn has failed to articulate *any* methodology for selecting these 70 pages of settings. Therefore, Bohn's haphazard selection of the 70 pages of settings is unreliable and must be excluded.

*3. Bohn's Opinion that Gridforce Took the IT System*

Gridforce argues that Bohn's opinion regarding whether Gridforce "took" Contour's IT System (defined as the 94 virtual machines, 40,000 lines of code, and related firewalls) should be excluded for unreliability. First, Gridforce refers to Bohn's deposition testimony that he has no opinion as to "whether Gridforce somehow took [the] code."[65] Second, Gridforce argues that Bohn deployed a "haphazard, intuitive inquiry" as opposed to a reliable methodology to

[63] 509 U.S. 569 (1993).

[64] District Courts are tasked with considering numerous factors, including: (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. *Pineda*, 520 F.3d at 247–48 (citing *Paoli*, 35 F.3d at 742 n.8).

[65] Gridforce's Mem. Supp. Mot. Exclude Bohn [Doc. No. 338-1] at 12 (quoting Byer Decl., Ex. D, Bohn Dep. Tr. [Doc. No. 338-2] at 126).

determine whether Gridforce took the firewalls.[66] The PI Report attached to the First Bohn Report determined that there was a 68% match between Contour and Gridforce's virtual machines.[67] When asked how he came to this percentage, Bohn stated that he "counted the number of words to get that total percentage of words and said what percentage of words were the same."[68] He also stated that he manually excluded words that were common, but failed to provide a list of the words that were excluded because he "just knew . . . because [he has] been doing this long enough that these things were common."[69] He did not provide a record showing what words were excluded.[70] Without an understanding of what words were excluded or why, such an expert conclusion cannot be helpful to a jury. Contour responds that Bohn's "numeric methodology is clear, simple and makes logical sense."[71] However, Contour fails to specifically address *any* of the concerns raised by Gridforce, and there is no indication that Bohn's purported methodology has been peer reviewed, is accepted in the field, or has a discernible rate of error.

Finally, Bohn states that he gathered the system configuration files and code settings of 28 virtual machines provided by Gridforce, and that he performed a side-by-side comparison with the systems initially provided by Contour.[72] Bohn articulated that he could not conduct a full analysis of all 94 VMs because Gridforce did not produce all of the log files for all 94 VMs.[73] Therefore, based on a purportedly limited record, Bohn determined that Gridforce likely

---

[66] Gridforce's Mem. Supp. Mot. Exclude Bohn [Doc. No. 338-1] at 12 (quoting *Oddi*, 234 F.3d at 156).

[67] Byer Decl., Ex. I, PI Report [Doc. No. 338-2] at 9.

[68] Byer Decl., Ex. D, Bohn Dep. Tr. [Doc. No. 338-2] at 62.

[69] *Id.* at 62–63.

[70] *Id.* at 62.

[71] Contour's Resp. Opp'n Mot. Exclude Bohn [Doc. No. 351] at 9.

[72] Byer Decl., Ex. I, PI Report [Doc. No. 338-2] at 4.

[73] *See* Byer Decl., Ex. A, First Bohn Report [Doc. No. 338-2] at 4.

copied 16 of the 28 systems.[74] However, such a finding is not helpful to a jury because Bohn defines the IT System as including 94 VMs. By analyzing only 28 of the 94 VMs, Bohn cannot reliably reach a determination on whether the IT System was stolen in its entirety.

*4. Bohn's Opinion that the IT System is an Electronic Communication*

Bohn concludes that the IT System was an "electronic communication while it was in electronic storage" pursuant to 18 U.S.C. § 2701(a)(2) because it was "copied/removed and transmitted electronically from one computer to another" during the migration.[75] Gridforce argues that this is an improper legal conclusion. Gridforce also notes that Bohn provides no explanation for his conclusion other than his own say-so. Contour concedes that the Court may hold that Bohn cannot conclude that anything meets or does not meet statutory definitions such as "electronic communication" or "electronic storage," but argues that Bohn does explain how the IT System meets the statutory definition. The question of whether the IT System qualifies as an electronic communication pursuant to 18 U.S.C. § 2701(a)(2) is not properly the subject of an expert report; a jury must apply the facts to the law to make this determination.[76] Therefore, Bohn is precluding from testifying to this conclusion at trial.

"[T]he reliability analysis [required by *Daubert*] applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion."[77] Because of the methodological weaknesses identified throughout Bohn's Expert Reports, the Court concludes that Bohn has failed to apply and articulate a clear

[74] Byer Decl., Ex. I, PI Report [Doc. No. 338-2] at 4.

[75] Byer Decl., Ex. B, Second Bohn Report [Doc. No. 338-2] at 13.

[76] *Whitmill v. City of Phila.*, 29 F. Supp. 2d 241, 246 (E.D. Pa. 1998) ("As a general rule an expert's testimony on issues of law is inadmissible." (citation omitted)).

[77] *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 291 (3d Cir. 2012) (citation omitted).

methodology by which he reaches his conclusions. Because the Court finds that Bohn's opinion is based upon his failure to faithfully apply reliable methods, and because his testimony is likely to confuse or mislead the jury, the Court will exclude Bohn's testimony at trial under *Daubert* and Rule 702.

## IV. CONCLUSION

For the reasons set forth above, the motion to exclude the opinion of James Thompson will be granted, and the motion to exclude the opinion of William Bohn will be granted. An appropriate order follows.